FRUGÉ, Judge ad hoc.
This is a workman’s compensation case •filed by Mrs. Oree Boykin Webb, individually and as natural tutrix of her minor child, to recover workmen’s compensation benefits for the death of her husband, Oree Webb, with whom petitioners resided and upon whom petitioners were solely dependent. Decedent was employed as a logging truck driver by Crosby Lumber and Manufacturing Company and James Graves and was killed on the job in West Feliciana Parish, Louisiana, on March 4, 1957, while loading logs cut by •Crosby Lumber and Manufacturing Company, in West Feliciana Parish, Louisiana.
Plaintiff alleged that Webb was in the employ of the defendants when he was accidentally killed, in the course of his employment on March 4, 1957. Plaintiff further alleged that Webb was employed to haul logs on a per thousand feet basis and that 65% of his net pay was far in excess of $34 per week.
James Graves answered the suit, denying liability on the ground that Webb was an independent contractor not covered by the Compensation Act. Crosby Lumber and Manufacturing Company filed a general denial.
According to the undisputed facts in the case, Crosby Lumber and Manufacturing Company had entered into a contract with James Graves on January 23, 1957 to load, haul and deliver logs from a tract of timber in West Feliciana Parish known as the Daniel and Truett Tract. This contract was in effect when Webb was killed. Under the contract, Graves was paid $22 per thousand feet for logs loaded, hauled and •delivered by him from the Daniel & Truett tract to the mill of Crosby Lumber and Manufacturing Company at Crosby, Mississippi. Oree Webb owned his own log truck and he had made an oral agreement with James Graves to haul some of this timber for Graves for which Graves paid Webb $15 per thousand feet,
While in the act of hauling a load of timber on March 4, 1957, Webb’s truck, driven by Webb, became mired in the mud near a spot in West Feliciana Parish where Graves and his men were loading logs. While supervising the freeing of the stalled truck, Webb was killed by a log which accidentally rolled off of the loaded truck and struck him.
The defendants admitted liability, but contended that the rate of compensation-should be based on the wages being paid other truck drivers doing the same work that Webb was doing, but who did not own their own trucks. The weekly wages of truck drivers not owning their own trucks was proved to be $40 per week.
On March 7, 1958, the lower court rendered a judgment, with written reasons therefor, allowing .plaintiff the maximum compensation of $35 per week on the ground that, regardless of what Webb’s net earnings from his truck may have been, these earnings were such an amount that 65% thereof as well as 32.5 thereof (which Mrs. Webb would be entitled to when her minor child reaches 18 years of age) were in excess of $35 per week.
A rehearing granted, the court revised his original judgment, allowing compensation to the plaintiff based on a weekly wage of $40.
Since defendants admit liability the only question at issue before us is the basis on which to compute the compensation due the plaintiff.
Plaintiff contends that this issue entails judicial interpretation of legislative intent and the method of computation to be employed, in arriving at the wages as defined under the Act, LSA-R.S. 23:1021. Plaintiff further contends that there is unquestioned authority that our Legislature promulgated the workmen’s compensation act to insure compensatory benefits to the workman and his family, injured on the job and on the other hand establish *292 a maximum liability for the employer for the injuries and the death of the employee.
It is plaintiff's contention that the compensation due the plaintiff should be based on the gross earnings of Oree Webb during the time that he hauled logs for James Graves. In other words, plaintiff contends that the $15 per thousand feet paid Webb for hauling logs with his own truck should be regarded as his wages.
The record showed that between January 16, 1957 to March 4, 1957, the period covered, Webb received a total of $1,318.32 for hauling logs with his own truck at the rate of $15 per thousand feet. Plaintiff’s counsel computed Webb’s daily “wages” at $54.01 and his weekly earnings at $216.-04. Counsel for plaintiff submitted to court another calculation based on the amounts paid Webb for hauling with his truck for the period covering February 20, 1957 through March 1, 1957. The total amount was $402.30 from which counsel computed a weekly “wage” of $229.88 and a daily “wage” of $57.47. These are the “wages” which plaintiff contended in the court should be the basis of the compensation award in this case.
In the case of Carter v. Consolidated Underwriters, 1953, 62 So.2d 682, 684, the Second Circuit held:
“ * * * The district judge calculated that plaintiff’s wages accordingly could be computed by subtracting the cost of his operation from the total monies received over the period of a week. We call attention to the fact that this method of calculation leads to a result in terms of profits for operations, and, in our opinion, has no relationship to wages which should and must serve as the basis for an award of compensation. [Emphasis by 2nd Circuit Court.]
“At the time of the injury plaintiff was engaged in manual labor, that is, in unloading logs from his truck, and in this respect we point out that he was doing the same character and nature of work as would have been the case had the truck been owned by another party. Plaintiff was doing the same kind of manual labor which on occasion was done by his employees who were paid by him, according to his testimony, $6 per day for such labor. We think it follows that the basis of plaintiff’s compensation must be the same as would have been the case with one of his employees doing similar work. * * *”
We are constrained to view the above holding in the Carter case appropriate here. In the light of this rule we cannot say that Webb’s gross earnings here represent his wages.
In another similar case, Alexander v. Latimer, 5 La.App. 41, the Court said:
“As to the amount of compensation, we do not think it possible to accept as a criterion the amount which the plaintiff had earned with the use of his truck, but the evidence shows that the earnings or wages of a driver of a truck was from $2.50 to $3.00 per day, and the trial court accepted the latter as the basis of its judgment.”
This case was cited with approval in the case of Nesmith v. Reich Bros., 1943, 203 La. 928, 14 So.2d 767.
The evidence in the present case showed that James Graves paid his regular employees as well as his truck drivers a weekly wage of $40. At the time that Oree Webb was killed, he was engaged in freeing his stalled truck with the help of James Graves and the men who worked for him for an hourly wage instead of on a unit basis as did Oree Webb.
For reasons hereinabove assigned the judgment of the lower Court is affirmed.
Affirmed.