203 So.2d 434 (1967)
Mathew BURGESS, Plaintiff-Appellant,
v.
SOUTHERN CASUALTY INSURANCE COMPANY, Defendant-Appellee.
No. 2106.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1967.
*435 Alfred Ray Ryder, Oberlin, for plaintiff-appellant.
Hall & Coltharp, by L. H. Coltharp, Jr., DeRidder, for defendant-appellee.
Before FRUGE, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by Mathew Burgess against Southern Casualty Insurance Company, the latter being the insurer of Heath Timber Company, Inc. Plaintiff seeks to recover workmen's compensation benefits based on total and permanent disability and the reimbursement of travel expenses incurred by him in connection with his medical treatment. Judgment was rendered by the trial court in favor of defendant, and plaintiff has appealed.
Plaintiff sustained a back injury on November 19, 1964, while working for Heath Timber Company, in Beauregard Parish. The duties of his employment required him to cut, load and haul pulpwood. While attempting to lift a log on that date he experienced a sharp burning pain in his lower back, and he contends that he has been disabled continuously since that time. He was treated by Dr. Harry Shaheen, a general practitioner, from the date of the accident until December 21, 1964, and he was treated by Dr. C. V. Hatchette, an orthopedic surgeon, from the last mentioned date until May 15, 1965. Dr. Hatchette discharged plaintiff on May 15, 1965, as being fully recovered and able to return to work.
Defendant paid compensation benefits to plaintiff at the rate of $31.20 per week from the date of the accident until May 20, 1965, at which time the payments were discontinued. Defendant also paid all of the medical bills incurred for the treatment of plaintiff's injury, except that prior to the perfecting of this appeal it did not reimburse Burgess for the expenses which he incurred in traveling to and from the offices of the treating physicians. These traveling expenses were paid later, however, after this appeal was perfected.
One of the important issues presented on this appeal is whether Burgess has been disabled, within the meaning of the Workmen's Compensation Act, since May 20, 1965, that being the date on which compensation payments were discontinued. Plaintiff claims that he has been disabled since that time, while defendant contends that he had fully recovered from his injury and disability by that date.
Dr. Shaheen did not testify at the trial. The evidence shows, however, that for four or five weeks immediately after the accident he administered conservative treatment to plaintiff, including hospitalization for five days.
Dr. Hatchette examined plaintiff initially on December 4, 1964, and diagnosed his injury as a "subacute lumbosacral strain." He began treating plaintiff on December 21, 1964, and continued to do so until May 15, 1965, during which time plaintiff made 17 visits to the doctor's office for treatment. Dr. Hatchette discharged plaintiff on the last mentioned date as being "ready to return to his usual duties without disability." He testified that in his opinion plaintiff had fully recovered from the effects *436 of hs injury and was able to return to his regular employment by May 15, 1965.
Burgess did not seek or obtain any further medical treatment after being discharged by Dr. Hatchette. On June 17, 1965, however, he was examined by Dr. John D. Jackson, a neurosurgeon, who concluded that plaintiff had received a severe strain of the lumbosacral paraspinous muscles as a result of the accident. He testified that plaintiff "had recovered a great deal," but that in his opinion Burgess was "still having enough pain that he couldn't do heavy work." He felt that plaintiff would be fully recovered "probably in another five months."
Dr. Heinz K. Faludi, a neurosurgeon, examined plaintiff once, on January 19, 1966, about eight months after he had been discharged by Dr. Hatchette. He concluded that Burgess "may have had originally a herniated disc, but that at the time I saw him, such a disc was in remission, and the patient only had mild residuals from it." Dr. Faludi felt that plaintiff at that time should have been able to perform light work, and he encouraged him to do so. He testified that if he got along all right performing light work for a period of from three to six months, "he could then be given permission to return to heavy work."
The evidence shows that almost immediately after being discharged by Dr. Hatchette, plaintiff went into the logging business, and he hauled logs in his own truck to two sawmills from that time until the early part of November, 1965, or for a period of about six months. During that time he supervised his crews and he drove the truck. He had been performing this type work for several months before he was examined by Dr. Faludi.
The trial judge concluded that "plaintiff was able to resume his regular occupation after May 15, 1965, as testified by Dr. Hatchette." In arriving at that conclusion the judge noted that he attached greater weight to the opinions expressed by Dr. Hatchette, the treating physician, than he did to those expressed by the examining physicians.
No error was committed by the trial judge in attaching more weight to the opinions expressed by the treating physician, who also was a specialist in the field covered by plaintiff's injury, than he attached to the opinions of the two examining physicians, each of whom saw plaintiff one time for examination only, and that was several months after the accident occurred. Satterwhite v. Zurich Insurance Co., 199 So.2d 429 (La.App.1st Cir.1967); Matherne v. Wheless Drilling Company, 174 So. 2d 921 (La.App.4th Cir.1965); Harrell v. Southern Pulpwood Ins. Company, 155 So. 2d 281 (La.App.3d Cir.1963); Tullier v. Ocean Accident and Guarantee Corp., 141 So.2d 521 (La.App.4th Cir.1962); Braswell v. Fidelity and Casualty Company of New York, 135 So.2d 532 (La.App.2d Cir.1961, Cert. denied).
We have reviewed the evidence and we think it supports the findings of the trial judge that plaintiff had fully recovered from his injury and was able to return to his employment by May 20, 1965, that being the date on which the payment of compensation benefits was discontinued. Since plaintiff had recovered from his injury by May 20, 1965, the trial judge correctly held that he is not entitled to recover compensation benefits after that date.
The next issue presented relates to the amount of the weekly compensation benefits which were due plaintiff during his period of disability. Burgess argues that he was entitled to benefits at the rate of $35.00 per week, instead of $31.20 as found by the trial court. He contends that the trial judge erred in failing to award him the difference between the amount of compensation which he claims and the amount which was paid.
Plaintiff was not working full time in the pulpwood business at the time he sustained the injury. He had a regular job working *437 eight hours per day as a night watchman for another employer, and he reported to work for that employer daily at 3:30 p.m. Because of his regular working hours as a night watchman it was impossible for him to devote a full day at any time to the hauling of pulpwood. Plaintiff also had a relatively small truck, the maximum capacity of which was one and one-half cords of wood, or approximately one-half the capacity of a standard size truck, and he had no employees to assist him in his pulpwood activities.
The trial judge concluded, and we agree, that under the existing circumstances Burgess could not cut, load and haul more than one load, consisting of about one and one-half cords, of wood per day. He was paid $8.00 per cord for pine and $8.25 per cord for gum wood, that being the total amount which he received per cord for his labor, for the use and depreciation of the truck, and for all of the expenses which he incurred in cutting and delivering the pulpwood. The average cost of labor employed to cut, load and haul pulpwood, that being the type labor he was performing, was $4.00 per cord. Since plaintiff could cut, load and haul a maximum of one and one-half cords per day, the prevailing wage for a day's labor would have been a maximum of $6.00 per day.
When the injured party is an independent contractor, engaged in manual labor of the same kind as that done by his employees, then his profits and overhead cannot be included as a part of his "wages" in computing the weekly rate of Workmen's Compensation Benefits which may be due him. In such a situation, the courts will determine the prevailing wage basis for work similar in character to that performed by the claimant, and will use that amount in computing the amount of compensation which may be owed. Carter v. Consolidated Underwriters, 62 So.2d 682 (La.App.2d Cir. 1953); Webb v. Crosby Lumber and Manufacturing Co., 105 So.2d 290 (La.App. 1st Cir.1958); Malone, Louisiana Workmen's Compensation Law and Practice, P. 185 of 1964 Supplement.
In the instant suit, the prevailing wage basis for the type of work which plaintiff was performing was $6.00 per day, or $36.00 per week for a six day week. Sixty-five percent of that sum amounts to less than the weekly payments which were made to plaintiff during his period of disability. We agree with the trial judge, therefore, that plantiff is not entitled to recover additional compensation.
Plaintiff contends finally that the trial judge erred in failing to allow him to recover the travel expenses which he incurred in obtaining medical treatment during his disability. We agree, and the defendant admits, that an injured employee is entitled to recover reasonable expenses incurred by him in traveling to and from the offices of the treating physicians or to and from the hospital for the purpose of obtaining medical treatment for his injury. Walters v. General Accident and Fire Assur. Corp., Ltd., 119 So.2d 550 (La.App.1st Cir.1960); Murry v. Southern Pulpwood Ins. Co., 136 So.2d 165 (La.App.3d Cir.1961); Southall v. Kingsville Timber Company, 168 So. 2d 424 (La.App.3d Cir. 1964); Billiot v. Liberty Mutual Insurance Company, 168 So.2d 413 (La.App.3d Cir.1964); Dugas v. Houston Contracting Company, 191 So.2d 178 (La.App.3d Cir.1966); Cain v. St. Paul Fire and Marine Ins. Co., 201 So.2d 286 (La.App.3d Cir.1967).
In the instant suit, although plaintiff alleged that he made 27 trips to his treating physicians for treatment, he did not allege the distances he traveled or the expenses which he incurred, and he did not set out any figure or amount which he claimed as travel expenses. At the trial he testified that he made 34 such trips, using his own car, and he gave the distance he traveled in making each such trip. No evidence was presented, however, tending to show what expenses were incurred or what would be a reasonable mileage allowance for such travel, and plaintiff did not at any time suggest *438 the amount which he claims as reimbursement for travel expenses.
Defendant alleged in its answer to the suit that plaintiff had never submitted any information as to the travel expenses which had been incurred, and that defendant had offered to pay these travel expenses upon being presented with a statement showing the amount due. The evidence shows that offers were made by defendant to pay the expenses upon receipt of an itemized statement, but that no such statement was furnished and that plaintiff did not inform defendant of the amount which he claimed as travel expenses.
After this case was argued on appeal plaintiff filed in this court a "Motion to Supplement and Amend Petition," in which he seeks to amend his original petition by itemizing the cost of the trips he made for medical treatment. He attaches to and makes a part of this pleading an itemized statement showing the number of trips made, the miles traveled and a charge of ten cents per mile for each such trip, making a total of $141.10 claimed for travel expenses. Immediately after this pleading was filed, defendant paid to plaintiff the sum of $141.10, being the full amount claimed as travel expenses.
Defendant was justified in withholding the reimbursement of travel expenses to plaintiff until the latter submitted an itemized statement of those expenses or informed defendant of the amounts claimed. Since the full amount claimed as travel expenses was paid to plaintiff immediately after such a statement was presented, the issue of whether plaintiff is entitled to recover such expenses has now become moot.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.