883 So.2d 1139 (2004)
Herbert RAVY
v.
BRIDGE TERMINAL TRANSPORT.
No. 2004-CA-0134.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 2004.
Rehearing Denied October 29, 2004.
*1141 Hollis Shepherd, New Orleans, LA, for Plaintiff/Appellant.
Philip J. Borne, H. Carter Marshall, Christovich & Kearney, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court Composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
The plaintiff/appellant, Herbert Ravy ("Ravy"), appeals from a summary judgment rendered by the workers' compensation judge that found that he had violated La. R.S. 23:1208, thereby forfeiting his rights to workers' compensation benefits. Ravy also appeals from a second summary judgment that concluded that he could not carry his burden of proving that his average weekly wage was not $196.50 per week. For the following reasons, we affirm in part and reverse in part, remanding the matter to the trial court for further proceedings.
Ravy filed a disputed claim for compensation, alleging that on 3 November 2000, he was involved in a work-related accident while working for the defendant/appellee, Bridge Terminal Transport (hereinafter "BTT") as an independent contractor/truck driver. Ravy maintains that he suffered injuries to his head, neck, back, and legs when the vehicle he was driving collided with a pick-up truck in Texas.
On 4 November 2000, BTT began paying Ravy workers' compensation indemnity benefits in the amount of $388.00 per week, the maximum provided by the Louisiana Workers' Compensation Act (hereinafter "the Act"). On 21 November 2001, BTT terminated its payment of indemnity benefits.
On 26 March 2003, BTT filed two motions for summary judgment. The first was based on the calculation of Ravy's average weekly wage. The second motion argued that Ravy had forfeited his compensation benefits due to false statements he allegedly made to his treating physicians about prior injuries and alleged false statements made in his deposition regarding dental and mouth injuries sustained in the 3 November 2000 accident. In opposition, Ravy argued that he has been forthright regarding the existence and extent of his injuries and that any false statements made by him were either inconsequential and/or not willful. Ravy also opposed the motion contesting the BTT's calculation of his average weekly wage.
The workers' compensation judge heard the motions for summary judgment on 14 May 2003, and on 20 June 2003, both motions were granted. In the first judgment, the court held that Ravy could not prove that his average weekly wage was not $196.50 per week, with a temporary total disability rate of $131.00. In the second judgment, the court found that Ravy willfully made false statements concerning prior injuries and injuries allegedly sustained in the accident of 3 November 2000 for the purpose of obtaining compensation benefits. Thus, the court held that Ravy violated La. R.S. 23:1208 and forfeited all rights to workers' compensation benefits; the claim for benefits was dismissed with prejudice.
Ravy sets forth three assignments of error. First he argues that the court erroneously granted the summary judgment, finding that he made false statements concerning prior injuries and injuries sustained in the accident in question for the purpose of obtaining workers' compensation *1142 benefits. He also contends that the trial court erroneously held that he violated La. R.S. 23:1208, thereby forfeiting his right to benefits. Finally, he argues that the trial court erred in its calculation of his average weekly wage. We conduct a de novo review of the record. Hernandez v. ESKCO, Inc., XXXX-XXXX (La.App. 4 Cir. 11/15/00), 773 So.2d 865 writ denied, XXXX-XXXX (La.2/9/01), 785 So.2d 824.
La. R.S. 23:1208 provides in part:
§ 1208. Misrepresentations concerning benefit payments; penalty
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * * * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
The only requirements for forfeiture of benefits under Section 1208 are (1) a false statement or representation (2) that is willfully made (3) for the purpose of obtaining or defeating any benefit or payment under the workers' compensation law. Resweber v. Haroil Construction Company, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, 14. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians, or insurers, when made willfully or deliberately for the purpose of obtaining benefits. Id. at pp. 1-2, 660 So.2d at 9. Moreover, the statute contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. Id. at p. 2, 660 So.2d at 9.
Statutory forfeiture is a harsh remedy and must be strictly construed. Hernandez, supra, XXXX-XXXX at p. 3, 773 So.2d at 867, citing Benoit v. Frank's Casing Crew, 97-1522 (La.App. 3 Cir. 5/20/98), 713 So.2d 762, writ denied, 98-1697 (La.10/9/98), 726 So.2d 31. False statements that are inadvertent or inconsequential will not result in forfeiture. Id., citing Menard v. Mama's Fried Chicken, 97-488 (La.App. 3 Cir. 3/6/98), 709 So.2d 303, writ denied, 98-0956 (La.6/5/98); 720 So.2d 681.
Immediately after the accident on 3 November 2000, Ravy was treated at the East Texas Memorial Center. It was documented that his chief complaint was neck pain and that he was dazed. Before receiving treatment, Ravy was asked to provide his medical history. He was instructed to list conditions such as diabetes, seizures, heart disease, hypertension, previous surgeries, and tobacco use, among others. The medical center never sought information about prior conditions such as sprains and strains. In responding to the question about prior surgeries, Ravy listed a torn rotator cuff that was surgically repaired in 1976.
Norman Ott, M.D., in New Orleans, next saw Ravy. When questioned about his past medical history, Ravy reported the left rotator cuff tear that was surgically repaired in 1976. He denied any other accidents, injuries, or prior neck or back problems. Ravy was diagnosed as having a cervical/trapezius strain with spasm, thoracolumbar strain and impact, and a left hip strain and impact.
After treating with Dr. Ott for about a year, Ravy was referred to F. Allen Johnston, M.D., an orthopedic surgeon in New Orleans. Dr. Johnston also required that Ravy list his prior medical history. Ravy *1143 was instructed to list conditions such as ulcers, excessive bleeding, diabetes, high blood pressure, heart, lung, or kidney disease, cancer, circular disorders, etc. Dr. Johnston also requested Ravy's past surgical history; Ravy listed his 1976 rotator cuff repair. Dr. Johnston also documented that Ravy remembered hitting his face on the steering wheel and restraints during the accident.
On 29 November 2000, Gordon Nutik, M.D., an orthopedic surgeon, in Metairie, examined Ravy on behalf of the insurer. At the examination, Ravy reported the 1976 rotator cuff tear but denied any prior history of neck pain, mid or low back pain or hip pain. Dr. Nutik diagnosed Ravy with soft tissue strains about the neck, mid back, lower back, as well as a soft tissue contusion about the right hip, and recommended that Ravy attend physical therapy.
Lastly, Roger Smith, M.D., examined Ravy at the request of the insurer. Dr. Smith recommended that Ravy undergo surgery and discontinue physical therapy. Surgery took place on 16 May 2001.
On 24 May 2002, counsel for BTT deposed Ravy. At that time, he denied any prior accidents or injuries. He also denied prior injuries in his discovery responses.
In the course of discovery, medical records were obtained from Pendleton Memorial Methodist Hospital in New Orleans, and George Murphy, M.D., also of New Orleans. These records indicate that while driving for another company, Ravy was involved in a motor vehicle accident on 15 January 1996. While he reported some slight discomfort in his neck, his major complaint was pain in his right shoulder and arm. He was diagnosed with a cervical strain and shoulder strain. As of his visit to Dr. Murphy in March 1996, the sole diagnosis was a shoulder strain. He was allowed to return to work on 27 March 1996.
In addition to Ravy's alleged failure to disclose the 1996 accident, BTT also contends that Ravy gave false testimony about the injuries he received in the 3 November 2000 accident. The medical records obtained from East Texas Medical Center indicate that Ravy complained only of neck and leg pain on the date of the accident and that there was no evidence of trauma to Ravy's head and/or dental injury. BTT points out, however, that at his deposition in May 2002, Ravy testified that he suffered mouth and dental damage as a result of the accident.
Based on Ravy's medical records, his deposition testimony, and discovery responses, BTT filed its Section 1208 motion for summary judgment, arguing that Ravy had forfeited his right to compensation benefits. The trial court agreed.
On appeal, Ravy contends that the summary judgment should not have been granted and that the overwhelming weight of the evidence clearly establishes that Ravy did not violate the spirit or rule of La. R.S. 23:1208. Based on our examination of the record, we find genuine issues of material fact that preclude summary judgment.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). Summary procedure should be used cautiously and sparingly; any reasonable doubt should be resolved against mover in favor of full trial on the merits. Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152 (La.1983); Sanders v. Hercules Sheet Metal, *1144 Inc., 385 So.2d 772 (La.1980). Moreover, it is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. Johnson v. Hitchens, 518 So.2d 1154 (La.App. 4 Cir.1987).
The East Texas Medical Center's questionnaire asked for conditions such as diabetes, seizures, heart disease, hypertension, previous surgeries, and tobacco use for the medical history. Ravy listed his 1976 rotator cuff surgery. As far as these medical records are concerned, there is no question concerning prior accidents.
With regard to Dr. Johnston, Ravy readily admitted that Dr. Murphy had treated him in the past. Ravy contends that he answered all questions posed to him to the best of his ability. In fact, as reported by Dr. Johnston, Ravy denied "any other accidents or injuries, neck, back or medical condition." This statement is ambiguous and capable of multiple interpretations. For example, Dr. Johnston could have been asking whether Ravy had ever been involved in any type of prior accident, or one that resulted in injuries to his neck or back. In the 1996 accident, Ravy complained primarily of shoulder pain, although he was also diagnosed with a mild cervical strain, which was resolved quickly and without treatment. In fact, Ravy was specifically quoted as saying "my shoulder hurts."
The medical records from the instant accident reveal that Ravy has distinguished his present back and neck complaints from the shoulder complaints that he had in 1996. In addition, the record in its entirety evidences material issues of fact as to whether Ravy "willfully" omitted his 1996 injury for the purpose of obtaining compensation benefits.
The penalty of forfeiture will be imposed only when the employer is prejudiced, i.e., when the false statement directly relates to the medical condition on which the claim for benefits is based or affects the employer's ability to receive reimbursement from the second injury fund. Resweber v. Haroil Construction Co., 94-2708 (La.9/5/95), 660 So.2d 7. For example, in Hernandez, supra, the claimant, who was seeking benefits for head, neck, and back injuries, had prior head, neck, and back pain as the result of two earlier accidents, which he specifically denied in his deposition. There, this court held that the ample evidence submitted by the employer was sufficient to find that Hernandez's misrepresentations were willful and that summary judgment in favor of the employer was proper. Hernandez, XXXX-XXXX at p. 8, 773 So.2d at 870.
The word "willful" has been defined as "proceeding from a conscious motion of the will; voluntary; knowingly; deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." Grant v. Natchitoches Manor Nursing Home, 96-1546, p. 4 (La.App. 3rd Cir.5/14/97), 696 So.2d 73, 76, writ denied, 97-1582 (La.10/17/97), 701 So.2d 1330, citing Black's Law Dictionary 1599 (6th ed.1990).
The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement that is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits. Resweber, 95-2158 at p. 16, 660 So.2d at 16.
Credibility issues have no place in summary judgment procedure. Lexington House v. Gleason, 98-1818, p. 6 (La.App. 3 Cir. 3/31/99), 733 So.2d 123, 126, writ denied, *1145 99-1290 (La.6/25/99), 746 So.2d 603. "It is not the court's function on a motion for summary judgment to determine or even inquire into the merits of the issues presented. While deposition testimony may be used to support or oppose a motion for summary judgment, it may not be weighed." Id. [citation omitted]. Had this case come before us in the posture of an appeal from a judgment on the merits, we might be compelled to affirm. However, because the ultimate conclusion that Ravy willfully made false statements for the purpose of obtaining benefits required the weighing of evidence and the making of credibility calls in the context of a motion for summary judgment, we find that the trial court erred in granting summary judgment.
The trial court also concluded that Ravy willfully made false statements concerning dental injuries allegedly sustained in the 3 November 2000 accident. On appeal, Ravy argues that he reported from the beginning that he struck his face on the steering column. In opposition to the motion for summary judgment, Ravy introduced dental records evidencing a thorough dental exam by H.R. Guerra, D.D.S., which states that there was damage to one of Ravy's teeth, which could be attributable to his accident. The dentist was careful to distinguish between pre-existing conditions and the treatment needed as a result of the accident. Consequently, we find that summary judgment on this issue should not have been granted.
The final assignment of error concerns the calculation of Ravy's average weekly wages. Ravy contends that the lower court's calculation was based solely on Ravy's yearly income tax returns and that a material issue of fact exists as to the number of days he worked in the twenty-six weeks immediately preceding the accident.
La. R.S. 23:1021(10)(d) provides in pertinent part:
10) "Wages" means average weekly wage at the time of the accident.
The average weekly wage shall be determined as follows:
* * *
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by the average number of days worked per week[.]
After reviewing the evidence in support of the motion for summary judgment, we find no genuine issues of material fact and that the summary judgment was proper. BTT introduced into evidence computerized driver settlement statements demonstrating the actual days worked by Ravy for the first forty-four weeks in 2000 until the date of the accident. In addition, Ravy's tax returns were used to determine the amount of expenses he had in connection with his job as an independent truck driver. As stated by the court in Edwards v. Delta Timber Co., 94-725, p. 3 (La.App. 3 Cir. 12/7/94), 647 So.2d 548, 550:
While not required by the express language of LSA-R.S. 23:1021(10)(d), an employee's expenses are deducted from his gross earnings if the employee supplies his own equipment or helpers. See Nesmith v. Reich Bros., 203 La. 928, 14 So.2d 767 (1943); France v. A & M Wood Co., 566 So.2d 106 (La.App. 2d Cir.1990); Herrin v. Georgia Cas. & Sur. Co., 414 So.2d 1323 (La.App. 2d Cir.1982); Burgess v. Southern Cas. Ins. Co., 203 So.2d 434 (La.App. 3d Cir.1967); *1146 Thompson v. Cloud, 166 So.2d 28 (La.App. 3d Cir.1964); Webb v. Crosby Lumber and Mfg. Co., 105 So.2d 290 (La.App. 1st Cir.1958); Carter v. Consolidated Underwriters, 62 So.2d 682 (La.App. 2d Cir.1953). The reason for subtracting an employee's expenses from his gross earnings is to exclude any return on capital in the determination of worker's [sic] compensation benefits. See Malone & Johnson, 14 Louisiana Civil Law Treatise: Workers' Compensation § 327 (3d ed.1994). Simply demonstrated, if it costs an employee $5 to make $10 then that employee only earns $5. Because the employee only earns $5, it would be unfair to use the $10 figure to calculate his worker's [sic] compensation benefits.
We find that the trial court correctly determined Ravy's average weekly wage and, therefore, this assignment of error is without merit.
Based on the foregoing, we reverse the summary judgment granted on the issue of whether Ravy violated La. R.S. 23:1208 and affirm the summary judgment on the issue of Ravy's average weekly wage. We remand the matter to the trial court for further proceedings.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.
LOVE, J., Concurs in part and dissents in part.
I concur with the majority's opinion in finding that genuine issues of material fact exists which preclude summary judgment in so far as finding that relator made false statements concerning prior injuries and realtor violated La. R.S. 23:1208. However, I respectfully disagree with the majority as it pertains to the calculation of average weekly wages. The trial court erred in utilizing the 2002 yearly income tax returns to determine relator's average weekly wages, as the tax returns were not a clear indicator of days worked nor expenses incurred in connection with his job as an independent truck driver. Therefore, I find that genuine issues of material fact exist as to the number of days relator worked in the twenty-six weeks immediately preceding the accident.