**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Quirino ORTEGA, Hector Broche, Angel Moraton, Grumrisimdo Simon, Alberto Palau and Erick Ferdinand Rodriguez, Defendants-Appellants.**

No. 80–5397
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 8, 1981.

Rehearing Denied June 5, 1981.

Geoffrey C. Fleck, Miami, Fla., for Ortega, Broche & Moraton.

Benedict P. Kuehne, Donald I. Bierman, Miami, Fla., for Simon, Palau & Rodriguez.

Daniel H. Forman, Samuel Smargon, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

PER CURIAM:

The six appellants were found guilty of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 (1970) and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (1978). All appellants, except Alberto Palau, were sentenced to three years imprisonment, followed by a two year special parole term to run concurrently on each count. Appellant Palau was sentenced to four years imprisonment, with a two year special parole term, to run concurrently on each count. On appeal, the appellants contend that evidence seized in violation of their Fourth Amendment rights was used against them in the trial.

United States Customs officers stationed near Key Largo, Florida, received information from a source that on July 5 or 6, 1978, some four or five vessels would smuggle marijuana into the United States and off-load in Key Largo. The source furnished the names of the vessels and described them as lobster boats. Two of the names disclosed were TORTUGA I, INC. and the GABRIELLA.

Based on this information, a land and boat surveillance was conducted for four nights near certain properties in Key Largo. Communication was maintained by customs radio. On July 18, 1978, at 3:00 o'clock a. m. the land team notified a customs officer on the boat team that the sound of diesel engines led them to believe the suspect vessels were leaving the shore.

With the aid of flares and a night vision device, officers conducting the water surveillance saw two boats that appeared to be lobster boats running without lights. At the time of the sighting, both boats were heading seaward at full throttle. As the customs boat narrowed the distance between it and the suspect vessels, it turned its spotlight on the closest vessel. The name TORTUGA I, INC. was illuminated. The second suspect vessel was ahead of the TORTUGA I, INC. and could not be seen due to darkness and distance.

After flashing its blue lights, the customs boat continued toward the two lobster vessels in an effort to stop them. When the customs boat got closer to the TORTUGA I, INC., officers could see bale-like objects in the cabin and on the deck and they noticed a strong odor of marijuana. The TORTUGA I, INC. stopped on command and two of the appellants were placed under arrest. A third was fished out of the water, full clothed, and placed on the customs boat. A subsequent search of the TORTUGA I, INC. revealed 430 bales of marijuana.

After stopping the TORTUGA I, INC. the customs boat headed toward the second vessel, which turned out to be the GA-

BRIELLA. Once again, as the customs vessel navigated along side and cast its lights on the vessel, officers could see burlap bales in the forward hatch and smell a strong scent of marijuana. Customs officers identified themselves to the persons aboard the GABRIELLA, and, at that time, placed them under arrest. The marijuana was then seized.

Suppression of the marijuana was sought by the appellants and a hearing was held before the magistrate. Following argument, the district judge adopted the recommendation of the magistrate and denied the motion to suppress.

■ Stops and searches conducted in a maritime locale are to be viewed from a special perspective. *United States v. Williams*, 617 F.2d 1063 (5th Cir. 1980). Those who venture on the seas are presumed to do so cognizant of the raft of regulations designed to promote their safe passage. *United States v. Whitmire*, 595 F.2d 1303 (5th Cir. 1979). *Cert. denied* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). Customs officers have broad statutory authority to board vessels and conduct inspections. *United States v. Freeman*, 579 F.2d 942 (5th Cir. 1978); 19 U.S.C.A. § 1581(a). Consequently, the "reasonable" expectation of privacy is often less aboard a vessel than on land. *United States v. Whitmire*, 595 F.2d at 1312. Although probable cause is still necessary before a warrant can issue, the exigencies peculiar to sea searches which would authorize action without a warrant must be viewed in light of the lesser expectation.

Defendants argue the customs officers had probable cause to search the vessels and their failure to obtain a warrant prior to the stops rendered the resulting arrests and seizures unconstitutional. Even assuming the existence of probable cause sufficient to obtain a warrant sometime prior to the stops, we find the warrantless seizures were justified by exigent circumstances. In *United States v. Mitchell*, 538 F.2d 1230 (5th Cir. 1976) (*en banc*), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 547 (1977), in the automobile context, the Court

said the test for warrant-necessity must be applied when the search is made, and if probable cause and urgency exist at that moment, the prior ability to obtain a warrant is immaterial. The inherent mobility of a vessel on the seas has been found to justify application of the *Mitchell* test to searches and seizures of vessels. *United States v. Cadena*, 585 F.2d 1252, 1263–1264 (5th Cir. 1978), *reh. denied*, 588 F.2d 100, 101–102 (5th Cir. 1979); *United States v. Weinrich*, 586 F.2d 481, 492–494 (5th Cir. 1978), *cert. denied sub nom. Blair v. United States*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 243 (1978).

■ In this case, the officers, although they may have had knowledge constituting probable cause, did not know the vessels' exact location or when they would arrive to offload the marijuana. The stops occurred at night, when the vessels were underway at full speed without running lights, and only after the informant's tip had been corroborated by physical observation of suspicious activities. In these circumstances, we cannot say the officers acted unreasonably in seeking corroboration. This is not a case where the officers merely waited in ambush for the vessels and seized them *only* on the basis of information known to them for a considerable length of time beforehand. *See United States v. Cadena*, 585 F.2d at 1263.

■ Even in the absence of probable cause, the investigatory stops, followed by seizure of marijuana in plain view, were not unconstitutional. The Fourth Amendment "does not require a policeman who lacks the precise level of information necessary for probable cause to arrest, to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612, 616 (1972). The facts were sufficiently summarized to allow these trained officers to apprehend that there was a strong likelihood of criminal activity afoot. Their decision to "stake out" the suspected location of the marijuana operation was an intermediate response in accord with established law enforcement proce-

dure. *United States v. Cortez,* —— U.S. ——, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). By this means they were able to corroborate the informant's information and make further observations of conduct consistent with illegal behavior, such as the vessels' 3 a. m. departure, without running lights and at full throttle seaward. At the time the vessels were detained, the customs officers were "aware of specific articulable facts, together with the rational inferences from those facts, that reasonably warrant[ed] suspicion" that their crews were marijuana smugglers. *See U.S. v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607, 618 (1975); *U.S. v. Serrano,* 607 F.2d 1145 (5th Cir. 1979), *United States v. Castro,* 596 F.2d 674 (5th Cir. 1979) *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979), *U.S. v. Whitmire, supra.* The stop for further investigation was not unconstitutional.

Having detected the odor of marijuana and seen the leafy bales piled on the deck as they executed the stop, the customs officers acted reasonably in boarding the vessel to arrest the appellants. They had, at that moment, probable cause to believe that a crime was being committed. In light of the exigencies, delay to wait for an arrest warrant was impossible. *United States v. Mitchell,* 538 F.2d 1230 (5th Cir. 1976), *cert. denied* 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 792 (1977).

Moreover, the law did not leave these arresting officers surrounded by 27,740 pounds of marijuana with no way to constitutionally take possession of it on the spot. It is true that the officers suspected all along that the appellants were shuttling marijuana. Consequently, discovery of the substance was not totally inadvertent in the general sense of the word. Yet "inadvertence" has a different meaning as used in defining the plain view doctrine of valid warrantless seizures. Officers must be without probable cause to believe the evidence will be discovered, until the possibility of its discovery becomes corroborated by actual observation. If the suspicion is confirmed during the course of another legitimate intrusion, the officers are in the same position as if they were taken wholly by surprise. *United States v. Hare,* 589 F.2d 1291, 1294 (6th Cir. 1979); *United States v. Bolts,* 558 F.2d 316, 320 (5th Cir. 1977), *cert. denied* 439 U.S. 898, 98 S.Ct. 417, 58 L.Ed.2d 246 (1978) (citations omitted). *See also, United States v. D'Antignac,* 628 F.2d 428 (5th Cir. 1980). After a valid *Brignoni-Ponce* stop, the officers saw the marijuana placed openly on the deck of the vessel, a location in which there could have been little expectation of privacy. This discovery was "inadvertent" in a Fourth Amendment sense. The warrantless seizure of the contraband was reasonable under the plain view doctrine.

For the convictions of conspiracy to possess with intent to distribute marijuana, the appellants were sentenced to a term of imprisonment plus a two year special parole term. The government agrees that, under the authority of *Bilfulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), the special parole term should be vacated. In all other respects, the decision of the district court is affirmed.

AFFIRMED AS MODIFIED.